UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RICHARD STANLEY ROZANSKI, | : | |
| | : | |
| *Plaintiff*, | : | |
| | : | |
| v. | : | Civil No. 3:17-cv-1904 (MPS) |
| | : | |
| NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY | : | |
| | : | |
| *Defendant*. | : | |

**RULING ON THE PLAINTIFF'S MOTION TO REVERSE AND THE DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER**[1]

In this appeal from the Social Security Commissioner's denial of benefits, Richard Rozanski argues that the Administrative Law Judge ("ALJ") erred in (1) evaluating the medical opinion evidence related to Mr. Rozanski's mental impairments; and (2) failing to explain why he found that Mr. Rozanski's testimony was not credible. He also asserts that the Appeals Council failed to apply the appropriate standard for considering new evidence. I agree with Mr. Rozanski's first two arguments and remand the case to the Commissioner.

I assume the parties' familiarity with Mr. Rozanski's medical history (summarized in a stipulation of facts filed by the parties, ECF No. 18, which I adopt and incorporate herein by reference), the ALJ's opinion, the record, and the five sequential steps used in the analysis of

---

[1] Mr. Rozanski's motion is styled as a motion for judgment on the pleadings. (ECF No. 14.) As I noted previously, I construe the filing as a motion to reverse or remand the decision of the Commissioner. (ECF No. 17; *see also* Pl. Brief, ECF No. 15 at 16 ("For the foregoing reasons, the decision of the Commissioner should be reversed . . . . Alternatively, the claim should be remanded for a new hearing . . . .").)

1

disability claims. I cite only those portions of the record and the legal standards necessary to explain this ruling.

## STANDARD OF REVIEW

"A district court reviewing a final . . . decision pursuant to . . . 42 U.S.C. § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Accordingly, a district court may not make a de novo determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to ascertain whether the correct legal principles were applied in reaching the decision, and whether the decision is supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). If the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982). The Second Circuit has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citation and quotation marks omitted). Substantial evidence must be "more than a mere scintilla or a touch of proof here and there in the record." *Id.*

## DISCUSSION

### I.    The ALJ's Evaluation of the Medical Opinion Evidence

Mr. Rozanski argues that the ALJ improperly assigned "little weight" to the opinions of his treating psychiatrist and a physician's assistant while assigning "great weight" to the opinion of a consulting psychologist and "some weight" to non-examining state agency consultants. I

find that the ALJ failed to adequately explain his reasoning for assigning "little weight" to the opinion of Mr. Rozanski's treating psychiatrist and that his conclusion was not supported by substantial evidence in the record. I therefore remand on that ground without reaching his other arguments as to medical opinion evidence.

Under the treating physician rule, "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal citation and quotation marks omitted).[2] "The regulations further provide that even if controlling weight is not given to the opinions of the treating physician, the ALJ may still assign some weight to those views, and must specifically explain the weight that is actually given to the opinion." *Schrack v. Astrue*, 608 F. Supp. 2d 297, 301 (D. Conn. 2009). The Second Circuit has required that:

> [T]he ALJ must explicitly consider, inter alia: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist. After considering the above factors, the ALJ must comprehensively set forth his reasons for the weight assigned to a treating physician's opinion.

---

[2] The Social Security Administration recently adopted regulations effectively abolishing the treating physician rule. *See* 20 C.F.R. § 416.920c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from your medical sources . . . . [W]e will consider those medical opinions . . . together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate."). The new regulations apply only to claims filed on or after March 27, 2017. *Id.* Because Mr. Rozanski filed his claim before March 27, 2017, I apply the treating physician rule under the prior regulations. *See Tanya L., Plaintiff, v. Comm'r of Soc. Sec., Defendant.*, No. 2:17-CV-136, 2018 WL 2684106, at *4 n. 1 (D. Vt. June 5, 2018) ("Because Plaintiff filed her claims before March 2017, however, the Court applies the treating physician rule under the earlier regulations (20 C.F.R. § 416.927), and not under the more recent ones (20 C.F.R. § 416.920c).").

*Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (internal citations, quotation marks, and alterations omitted). "The failure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand." *Id.* Nonetheless, "slavish recitation of each and every factor [is not required] where the ALJ's reasoning and adherence to the regulation are clear." *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013).

Mr. Rozanski asserts that the ALJ erred by assigning "little weight" to the opinion of Dr. Christopher Yergen, his treating psychiatrist. Dr. Yergen completed two *Mental Health Impairment Questionnaires* jointly with Mr. Rozanski's therapist, Linda U McEwen, LCSW. R. 1495–99; 1506–10.[3] On November 12, 2014, Dr. Yergen opined that Mr. Rozanski had "[l]imited ability" to "persist in simple activities without interruption from psychological symptoms," to "handl[e] frustration appropriately," or to "ask[] questions or request[] assistance." R. 1498–99. The opinion explained that Mr. Rozanski's "depressed mood and preoccupation with suicidal thoughts could impact [his] attention and concentration and completion of tasks."

On March 30, 2015, Dr. Yergen opined that Mr. Rozanski had "[m]arked" limitations across a variety of domains, including the ability to "[c]arry out detailed instructions," "[s]ustain ordinary routine without supervision," [c]omplete a workday without interruptions from psychological symptoms," and "[p]erform at a consistent pace without rest periods of unreasonable length or frequency." R. 1509. He estimated that Mr. Rozanski's impairments would cause him to be absent from work "[m]ore than three times

---

[3] The second *Mental Impairment Questionnaire* appears to have been addressed to "Dr. Edwin Czovek," R. 1506, but it was completed and signed by LCSW McEwen and Dr. Yergen. R. 1510.

per month." *Id.* A vocational expert testified that an individual who was consistently out of work one or two times per month "would probably not be employable" in the national economy. R. 99.

The ALJ assigned "little weight to Dr. Yergen's opinion." R. 43. He explained that the opinion was "inconsistent with the overall evidence" because "the claimant is generally intact cognitively and his suicidal thoughts are attributable to his medication noncompliance." *Id.* Further, the ALJ explained that Dr. Yergen's opinion was "inconsistent with the claimant's level of daily activities, which involves caring for himself, household chores and helping care for his younger children." *Id.* at 44. Finally, the ALJ noted that Dr. Yergen's opinion was inconsistent with the opinion of examining consultative psychologist Dr. Hart, whose opinion he gave "great weight."

### A. The ALJ Failed to Address the Length and Frequency of Treatment and Dr. Yergen's Specialty

I find that the ALJ's discussion of Dr. Yergen's opinion neither addresses the *Greek* factors nor provides a basis from which to infer that he considered those factors without discussing them explicitly. Specifically, the ALJ did not address the length or frequency of Dr. Yergen's treatment of Mr. Rozanski or acknowledge whether Dr. Yergen was a specialist. The ALJ cited Dr. Yergen's opinions where that information was identified. *See* R. 1506 (listing the date of first treatment as February 28, 2011 and citing "weekly" psychotherapy and "psychiatric . . . management every 2-3 months or as needed"); R. 1510 (listing Dr. Yergen's specialty as psychiatry). But both factors weigh in favor of giving Dr. Yergen's opinion greater weight, and there is no mention of them in the decision. Without an explanation of how the ALJ considered these factors, then, I cannot determine whether

5

he properly applied the law or whether his conclusions were supported by substantial evidence.

## B. The ALJ's Conclusion that Dr. Yergen's Opinion Was Inconsistent with Other Medical Evidence in the Record Is Not Supported by Substantial Evidence

The evidence the ALJ cites from the record in support of his decision to give Dr. Yergen's opinion "little weight" does not contradict Dr. Yergen's opinion. The ALJ found that Dr. Yergen's opinion was "inconsistent with the overall evidence." He points to records showing that (1) Mr. Rozanski was "generally intact cognitively"; (2) Mr. Rozanski's suicidal ideation was the result of "medication noncompliance"; (3) Mr. Rozanski's "depression had returned to baseline"; and (4) Mr. Rozanski was able to care for himself, complete household chores, and help care for his children. R. 43–44. None of these assertions contradicts Dr. Yergen's opinion.

First, Mr. Rozanski could reasonably have the deficits Dr. Yergen identified even if he was "intact cognitively." Mr. Rozanski was diagnosed with bipolar disorder, which the ALJ acknowledged was one of his severe impairments. (ECF No. 18 at 2, 5, 8, 18; R. 33). Bipolar disorder is characterized by alternating periods of mania and depression. Am. Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders* 123–126 (5th ed. 2013).[4] Although cognitive impairments may contribute to the vocational difficulties

---

[4] More precisely, Mr. Rozanski was diagnosed with bipolar I disorder. R. 1447, 1496, 1506. The diagnostic criteria for bipolar I disorder require only that an individual meet the criteria for a manic episode. Am. Psychiatric Assoc., *supra*, at 123. "However, the vast majority of individuals whose symptoms meet the criteria for a fully syndromal manic episode also experience major depressive disorder during the course of their lives." *Id.* Here, medical sources specified that Mr. Rozanski's most recent episode was depressed. R. 1447, 1496; 1618. One source also indicated that Mr. Rozanski had "rapid cycling type bipolar disorder." R. 1118; *see* Am. Psychaitric Assoc., *supra*, at 130 ("Individuals with bipolar I disorder who have multiple (four or more)

of people with bipolar I disorder, they are not required for the diagnosis. *Id.* at 123, 131. Dr. Yergen acknowledged that Mr. Rozanski did not have "deficits in memory or cognitive function." R. 1497. Nevertheless, he concluded that Mr. Rozanski's "depressed mood and preoccupation with suicidal thoughts" could impair his task performance. R. 1499. The conclusion that Mr. Rozanski was "intact cognitively" does not contradict Dr. Yergen's opinion about his ability to work, and the ALJ's finding to the contrary was not supported by substantial evidence.

Second, the ALJ explained that Mr. Rozanski's "suicidal thoughts [were] attributable to his medication noncompliance." R. 43. Dr. Yergen's opinion noted that several of Mr. Rozanski's symptoms occurred only "if off meds." R. 1507. Notably, though, Dr. Yergen did not attribute Mr. Rozanski's depressed mood, anxiety, suicidal ideation, difficulty thinking or concentrating, or intrusive recollections of a traumatic experience to medication noncompliance. *Id.* Moreover, the DSM-5 notes that treatment noncompliance is common among individuals diagnosed with bipolar I disorder. Am. Psychiatric Assoc. *supra*, at 129 (explaining under "Associated Features Supporting Diagnosis" of bipolar I disorder that "[d]uring a manic episode, individuals often do not perceive that they are ill . . . and vehemently resist efforts to be treated"). As a result, Mr. Rozanski's medication noncompliance may be a significant feature of his mental disorder. If the ALJ concluded that Dr. Yergen failed to consider the effect of the noncompliance on Mr. Rozanski's ability to work, he did not explain that conclusion, and such a conclusion would require an explanation given that most of the symptoms found by Dr. Yergen,

---

mood episodes (major depressive, manic, or hypomanic) within 1 year receive the specifier 'with rapid cycling.'").

7

including Mr. Rozanski's suicidal thoughts, were *not* qualified with the notation "if off meds." R. 1507. The ALJ thus failed to provide "good reasons" for disregarding Dr. Yergen's opinion.

Third, the ALJ asserts that a single recent treatment note indicated that Mr. Rozanski's depression had "returned to baseline." R. 34; *see* R. 1774. First, the treatment note in question, though difficult to read, appears to refer to "daily thoughts of suicide"—hardly a basis for rejecting Dr. Yergen's opinion on the functional limitations stemming from Mr. Rozanski's depression. R. 1774. Second, even if the note shows improvement, it is just a single snapshot, which does not constitute substantial evidence for a finding of functional capacity in an individual with bipolar disorder. Emotional lability is a hallmark of bipolar I disorder. Am. Psychiatric Assoc., *supra*, at 127. Thus, patients with the disorder "may shift very rapidly to anger or depression." *Id.* The record shows that Mr. Rozanski was consistently depressed or anxious at appointments until shortly before the May 5, 2016 appointment reflected in the note on which the ALJ relies. *Compare* R. 1774 (showing "baseline" depression on 5/5/2016), *with* R. 1773 (showing mood and affect "depressed" on 5/3/2016); R. 1770 (showing mood and affect "depressed" on 4/19/2016); R. 1767 (showing mood "anxious" on 3/30/2016); R. 1765 (showing mood "anxious" on 3/14/2016). Mr. Rozanski's mood at a single treatment session (to the extent it was improved) does not contradict Dr. Yergen's assessment based on a years-long treatment relationship and expertise in psychiatry, particularly given that mood fluctuations are typical for individuals with Mr. Rozanski's condition. *See Matta v. Astrue*, 508 F. App'x 53, 57 (2d Cir. 2013) ("We recognize that a person suffering from bipolar disorder may be vulnerable to violent mood swings resulting in better days and worse days, and that a

claimant's stability on *some* days does not necessarily support the conclusion that he is able to work *every day*.") (internal quotation marks omitted).

Fourth, Mr. Rozanski's ability to complete household chores and care for his children is not inconsistent with the impairments that Dr. Yergen described. Dr. Yergen opined that Mr. Rozanski experienced "episodes of decompensation or deterioration *in a work or work-like setting . . . .*" R. 1508 (emphasis added). He explained that Mr. Rozanski "[a]voids all business-related activities, does not go into any public settings, and experience[s] increased anxiety when he must do so." *Id.* Thus, Mr. Rozanski's ability to function normally in his own home does not contravene Dr. Yergen's opinions about his ability to function in a work setting.

Finally, the ALJ assigned "little weight" to Dr. Yergen's opinion in part because he concluded that the opinion was "inconsistent with that of Dr. Hart," an examining psychologist whose opinion was given "great weight." R. 44. Dr. Hart opined that Mr. Rozanski's "attention, concentration, and short-term memory all seem[ed] to be intact," and that "he is able to complete tasks such as helping around the house and doing some cleaning . . . ." R. 1447. He concluded that Mr. Rozanski's symptoms were inconsistent with a diagnosis of posttraumatic stress disorder but explained that his "primary symptoms were clearly a significant mood disorder and no doubt he has visions [related to his suicide attempt] as it was very traumatic." *Id.* Dr. Hart did not offer any specific opinion on Mr. Rozanski's ability to function *in a work environment*. An ALJ may weigh valid medical opinions against one another. He may not, however, set aside a treating source opinion based on his own inferences. *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) ("Although an ALJ is free to resolve issues of credibility as to lay testimony or to choose between

9

properly submitted medical opinions, he is not free to set his own expertise against that of a physician who submitted an opinion to or testified before him.") (internal quotation marks and alterations omitted). Here, the ALJ set aside Dr. Yergen's opinion without citing directly conflicting medical opinion evidence. He thus appears to have "set his own expertise" against that of Dr. Yergen.

In light of Dr. Yergen's opinion that Mr. Rozanski's condition would cause him to be absent three or more times per month, R. 1510, and the vocational expert's testimony that such an individual would not be employable in the national economy, R. 99, I cannot conclude that the ALJ's error was harmless. Remand is thus appropriate to allow the ALJ to weigh the medical opinion evidence under the correct standard.

**II.        The ALJ's Credibility Assessment**

Mr. Rozanski next contends that the ALJ failed to make an explicit finding about the credibility of his testimony at the hearing. I find that this constitutes a basis for remand as well. In evaluating a claimant's testimony, an ALJ must determine whether "the evidence establishes a medically determinable impairment that could reasonably be expected to produce the [claimant's] symptoms . . . ." SSR 16-3p, 2016 WL 1119029.[5] Here, the ALJ concluded that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . . ." R. 40. Dr. Yergen concluded that Mr. Rozanski was not malingering. R. 1508. Further, as discussed above, the ALJ failed to properly weigh Dr. Yergen's opinion. The ALJ's assessment of Mr. Rozanski's credibility may

---

[5] This Social Security Ruling took effect on March 28, 2016. The ALJ rendered his decision on August 5, 2016.

10

change in light of his reevaluation of the medical opinion evidence, and he is directed to reconsider both on remand. *See Demera v. Astrue*, No. 12-CV-432-FB, 2013 WL 391006, at *4 (E.D.N.Y. Jan. 24, 2013) ("[A]fter the ALJ reassesses the opinions of the four treating physicians and obtains additional information as needed to resolve any inconsistencies or ambiguities, the ALJ must likewise reassess the credibility of [the claimant's] subjective complaints.").

## III. Conclusion

The ALJ failed to apply the treating physician rule to the opinion of Dr. Yergen. Accordingly, Mr. Rozanski's motion, ECF No. 14, is GRANTED in part and DENIED in part and the Commissioner's motion, ECF No. 19, is DENIED. The case is hereby REMANDED to the Commissioner for further proceedings consistent with this opinion.

IT IS SO ORDERED.

\_\_\_\_\_/s/_____

Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
January 22, 2019